# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| ASCENSION ABRIGO, § <br> § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> HILL COUNTRY TELEPHONE § <br> COOPERATIVE, § <br> § <br> *Defendant.* § <br> § | Civil Action No. SA-17-CV-702-XR |

## ORDER

On this date, the Court considered Defendant Hill Country Telephone Cooperative's Motion for Summary Judgment (docket no. 27) and the corresponding response and reply. After careful consideration, the Court will grant Defendant's motion for summary judgment.

## BACKGROUND

The facts in this case are largely undisputed. Plaintiff Ascension Abrigo began working for Hill Country Telephone Cooperative (HCTC) in February 2011. Docket no. 12 at 2. The company had previously employed Abrigo from December 2008 until July 2010. *Id.* HCTC is a member-owned cooperative that provides telephone, internet, and security services to residential and business customers across fourteen counties in the Hill Country area. Docket no. 27-1 at 60.

Abrigo began his 2011 employment in the Procurement Department of HCTC. *Id.* at 31-32. Because he lived far from where he worked, Abrigo took a carpool with other HCTC employees. *Id.* at 33, 35. There were up to five employees from different departments at HCTC participating in the carpool at one point. *Id.* at 52. A manager, Randy Farrell, and a

supervisor, Steve Copp, participated in the carpool. *Id.* Both Farrell and Copp are Caucasian. *Id.* at 55-56. Abrigo is Hispanic. Docket no. 1 at 10.

HCTC's employee handbook sets working hours as 8:00 A.M. until 5:00 P.M., Monday through Friday. Docket no. 27-1 at 70-71. Although each employee in the carpool was required to arrive at work by 8:00 A.M., the carpool regularly arrived between 8:20 A.M. and 9:00 A.M. *Id.* at 35. During the time Abrigo utilized the carpool while he worked in the Procurement Department, nobody in the carpool received a reprimand for tardiness. *Id.* at 52.

In August 2015, Abrigo applied for HCTC's opening for a business systems technician. *Id.* at 76-77. This position was in the Residential and Business Services Division (Business Division) of the Field Operations and Business Services Department (Services Department). *Id.* at 35, 83. Randy Henckel managed the Services Department, and Michael Freeman supervised the Business Division. *Id.* at 83. Henckel interviewed Abrigo. *Id.* at 36. Both Henckel and Freeman emphasized the importance of arriving at 8:00 A.M. every day for the new position. *Id.* at 14, 36. Abrigo was also told that he could no longer participate in the carpool because it would have him arrive late to work. *Id.* at 36-37. The Services Department required promptness because employees had to attend daily morning meetings. *Id.* at 4. Abrigo understood the need for timeliness in the new position and agreed to arrive at 8:00 A.M. every day. *Id.* at 36-37. With Henckel's approval, Abrigo successfully transferred to the Services Department as a systems technician in September 2015. *Id.* at 35, 37, 39.

After beginning work in the Services Department, Abrigo arrived late to the morning meetings, by his own admission, "almost every day." *Id.* at 16, 19. Abrigo's tardiness was addressed on multiple occasions. *See id.* at 65, 67, 73-74. In February 2016, Freeman noted on

2

a performance review that Abrigo's punctuality needed improvement. *Id.* at 73-74. In July of that year, Henckel emailed the entire department to remind employees of the 8:00 A.M. start time for the workday. *Id.* at 65. Finally, in August 2016, Abrigo was formally written up by Freeman for daily tardiness. *Id.* at 67. The reprimand also contained a warning that any further violation of HCTC policy could result in disciplinary action, up to termination. *Id.* Abrigo signed the written warning. *Id.* However, Abrigo's tardiness continued after the reprimand. *Id.* at 25.

In September 2016, HCTC laterally transferred Abrigo from the Business Division to the Security Alarm Division based on staffing needs. *Id.* at 61. Both the Business Division and the Security Alarm Division are within the same department, the Services Department, which was managed by Henckel. *Id.* at 83. Abrigo did not object to the transfer. While Abrigo was under the impression that his new division supervisor, Mario Giannini, handled tardiness less strictly, Giannini still warned Abrigo to be mindful of arriving to work late. *Id.* at 54. In October and December of 2016, Abrigo was again verbally warned that he would be written up or terminated if his late arrivals continued. *Id.* at 5.

Abrigo's punctuality continued to suffer into 2017. *See id.* at 63. Records indicate that Abrigo was on time to work only five times between January 1, 2017 and February 23, 2017. *Id.*; *see also id.* at 25-26 (Abrigo admitting he was late 22 of 27 days between January 1 and February 8). On February 8, 2017, Giannini gave Abrigo a verbal warning about his tardiness. *Id.* at 85. However, Abrigo continued to arrive to work late on a near-daily basis. *Id.* at 63 (indicating Abrigo was tardy 7 out of 8 days of work). On February 23, 2017, Abrigo was terminated by Services Department Manager Henckel due to excessive tardiness. *Id.* at 54;

3

Docket no. 12 at 2.

After his termination, Abrigo filed a charge of discrimination against HCTC with the Equal Employment Opportunity Commission (EEOC). *See* Docket no. 27-1 at 53-58. Abrigo alleged that HCTC treated other employees of a different race more favorably than him by not disciplining them for their tardiness. *Id.* at 55. Abrigo thought it particularly unfair that the other carpool participants were not punished for their continued late arrivals. *Id.* at 54. The EEOC was unable to conclude that HCTC violated the antidiscrimination statutes. Docket no. 28-8. Abrigo then commenced this suit against HCTC for violating Title VII of the Civil Rights Act of 1964 ("Title VII") and Chapter 21 of the Texas Labor Code for discriminating against him based on his national origin (Hispanic). Docket no. 1 at 9-13.

In a prior order, the Court dismissed Abrigo's hostile work environment claim for failure to exhaust administrative remedies. Docket no. 26. HCTC now moves for summary judgment on the remaining discrimination claims.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

## II. Title VII National Origin Discrimination

Abrigo brings a claim for discrimination based on national origin. Title VII of the Civil Rights Act of 1964 makes it illegal for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C.A § 2000e-2(a)(1). A plaintiff can prove a Title VII claim with either direct or circumstantial evidence. *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010). When a plaintiff relies on circumstantial evidence, the claim is analyzed under a three-step framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

5

(1973)).

First, the plaintiff must set forth a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. Under the framework, "[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). An employee establishes a *prima facie* case if he can show that he "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). The nature of the evidence required to establish a prima facie case will differ depending on the specific facts and allegations in the case. *McDonnell Douglas*, 411 U.S. at 802 n.13.

Second, if the plaintiff succeeds in establishing a *prima facie* case of discrimination, the burden shifts to the employer to "articulate a legitimate non-discriminatory reason for the adverse employment action." *Id.* (citing *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009)). "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 557.

Finally, if the employer is successful in meeting this burden, the "inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for . . . discrimination." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). Mere speculation, conclusory beliefs, or unsubstantiated assertions are not sufficient to establish that an employee was discriminated against. *Grimes v. Texas*

*Dept. of Mental Health & Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996) ("Needless to say, unsubstantiated assertions are not competent summary judgment evidence."). "An employee's self-serving generalized testimony stating her subjective belief that discrimination occurred 'is simply insufficient to support a jury verdict in [a] plaintiff's favor.'" *Id.* at 140 (citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994)).

A. *Prima Facie* Case

Abrigo fails to establish a *prima facie* case of discrimination based on national origin. Abrigo meets the first three elements of a *prima facie* case, but fails to meet the fourth element. It is not disputed that Abrigo is a member of a protected class (Hispanic) or that Abrigo was qualified for his job. By all accounts, he performed his job proficiently besides his tardiness issues. *See* docket no. 27-1 at 54, 73-74. Nor is it disputed that Abrigo suffered adverse employment actions, including getting written up for tardiness and eventually being terminated for tardiness. The fourth element is where Abrigo's claim falls short: he cannot prove that HCTC replaced him with an individual who does not belong to a protected class or treated him differently than those similarly situated.

First, HCTC did not hire or transfer an employee into Abrigo's old position; his position remains open. Docket no. 27-1 at 61. Because no one has replaced Abrigo, let alone a member of a non-protected class, the fourth element of *prima facie* case cannot be met based on replacement by a non-protected individual. Therefore, Abrigo must meet the fourth element by showing that HCTC treated him less favorably compared to other similarly situated employees who were not Hispanic, under nearly identical circumstances.

Employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. *Lee v. Kansas City S. Ry. Co*., 574 F.3d 253, 260 (5th Cir. 2009). And the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. *Id.*

Abrigo complains that other, non-Hispanic employees who were also late to work were never disciplined for their tardiness. Abrigo specifically points to seven employees that he says were similarly situated and treated differently than he was for arriving late: 1) Nisha Robson; 2) Len Conrad; 3) Thomas Hansard; 4) Randy Farrell; 5) Steve Copp; 6) Bob Harris; and 7) Randy Henckel. *See* docket no. 27-1 at 8-10, 12-13, 18. But Abrigo fails to establish that these employees were treated differently "under nearly identical circumstances." *See Lee*, 574 F.3d at 260.

Employees that have different supervisors, different jobs, or who work for different divisions of the same company are generally not similarly situated. *Id.* at 259. According to the undisputed summary judgement evidence, four of the employees that Abrigo says received preferential treatment to him (Robson, Conrad, Farrell, and Copp) had different jobs, worked in different divisions, and had different supervisors. Robson worked in the Network Operations Department under Network Operations Manager Patrick Tinley; Conrad worked in the Information Technology Department, of which Randy Farrell was the manager; and Steve Copp was Manager of the Procurement Department. Docket no. 27-1 at 60. Robson, Conrad,

Copp, and Farrell all participated in the carpool, but none of them worked in the Services Department under Henckel, so none of them had to attend the 8:00 A.M. meetings. *Id.* at 33-34, 36. Thus, they were not situated similarly to Abrigo.

Employees being compared to determine whether one suffered disparate treatment must have "essentially comparable violation histories." *Lee*, 574 F.3d at 260. Harris worked in the Services Department with Abrigo but did not have a similar violation history. While Abrigo admits he arrived late to meetings "three or four times a week," he says that Harris arrived late only "once or twice" a month. Docket no. 27-1 at 10, 18. Because Harris was tardy to work much less frequently than Abrigo, the two do not have comparable violation histories.

Lastly, nearly identical circumstances require that, among other things, "the employees being compared held the same job or responsibilities." *Lee*, 574 F.3d at 260. Henckel is the Manager of the Business Services Department and oversees twenty-five employees in various divisions and positions. *See* docket no. 27-1 at 83. Abrigo was employed as a systems technician and security alarm technician. *Id.* at 41, 43. Although Abrigo says Henckel arrived late to the morning meetings as often as Abrigo himself would arrive late, Abrigo also admitted that Henckel did not regularly attend the morning meeting. *Id.* at 16-17. Further, the differences in their job responsibilities serve to differentiate how the two are situated within the company. *See id.* at 18. At the time, Henckel had no designated start or stop time and was a salaried employee and manager. *Id.* at 60. Because Abrigo served in a different position and was repeatedly reminded of his job responsibility to arrive at 8:00 A.M., he is not similarly situated to his upper manager, Henckel.

Hansard is the only employee named by Abrigo that may potentially be similarly

9

situated to him, though Abrigo fails to provide evidence demonstrating that he is an appropriate comparator. Abrigo testified that Hansard arrived late as often as Abrigo and also worked in a division in Henckel's Services Department. Hansard worked in the Technology Solutions Division of the Services Department under Supervisor Brian Stegall and thus had a different direct supervisor than Abrigo. *Id.* at 48, 60. However, circumstances can still be nearly identical when "the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor." *Lee*, 574 F.3d at 261. Hansard and Abrigo both ultimately worked under Henckel. *See id.* at 35, 60, 79. But Abrigo fails to establish that he and Hansard shared the same job or responsibilities. Hansard worked as a technology support associate and Abrigo worked as a systems technician, then a security alarm technician. Docket no. 27-1 at 6, 37, 60. The dissimilarity of job positions and responsibilities tends to show that employees are not similarly situated. *See Lee*, 574 F.3d at 260.

As for having a comparable violation history, Abrigo testified that Hansard was late maybe four times a week and that he saw Hansard pulling up at the same time as him every day. Docket no. 27-1 at 13, 48. However, he does not provide any evidence concerning the time period over which Hansard was tardy, compared to his own record of tardiness. He also admitted that he could not prove that other employees were late as often as he was without seeing their time records. *Id.* at 28-29. And although Abrigo complained that Hansard was also late but never reprimanded or written up, he did not know if Hansard was ever reprimanded for tardiness after August 2016, which was the last time he spoke to Hansard about his tardiness. Docket 27-1 at 8, 27, 48-49. Thus, he admits that he does not know if Hansard was

disciplined for tardiness between August 2016 and February 2017, when Abrigo was terminated. Therefore, he fails to establish that he and Hansard are similarly situated or that Hansard was treated more favorably for the same conduct.

HCTC has offered summary judgment evidence that each employee that Abrigo offers as a comparator is not similarly situated to him, and Abrigo fails to rebut this evidence.[1] Because Abrigo is unable to identify a similarly situated employee that received more favorable treatment than him, he has failed to allege a *prima facie* case of national origin discrimination, and summary judgment is appropriate. Nevertheless, in an abundance of caution, the Court will continue the burden-shifting analysis.

B. Pretext

If the employee establishes a *prima facie* case, the burden shifts to the employer to show that it had a legitimate, nondiscriminatory reason for firing the employee. *See McDonnell Douglas*, 411 U.S. at 802. This is simply a burden of production, not persuasion. HCTC says it fired Abrigo for habitual tardiness. Docket no. 27-1 at 54. Abrigo acknowledges that HCTC gave a legitimate reason for his termination. Docket no. 28 at 2. Once the employer articulates a legitimate, non-discriminatory reason for terminating the employee, any presumption of discrimination established by the *prima facie* case disappears, and the employee bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

---

[1] Plaintiff's summary-judgment response contains legal arguments without pointing to specific information in the record that would establish his prima facie case. It attaches and references exhibits, but fails to discuss any specific evidence therein. A court is "not required to search the record in support of evidence supporting a party's opposition to summary judgment." *Williams v. Valenti*, 432 F. App'x 298, 303 (5th Cir. 2011). Nevertheless, the Court has reviewed the summary-judgment evidence to look for relevant evidence.

Abrigo does not allege that HCTC's reason given for terminating his employment is untrue. HCTC fired Abrigo for habitual tardiness. Docket no. 27-1 at 55. Abrigo admitted he arrived late to work "almost every day." *Id.* at 19. Thus, Abrigo acknowledges that he did have a habitual tardiness issue. Plaintiff does not appear to be asserting a mixed-motive claim. To the extent he is, such a claim fails because Abrigo offers only mere speculation and unsubstantiated assertions, which are insufficient for a jury verdict in his favor. *See Grimes*, 102 F.3d at 139-40. Abrigo admitted that Henckel never did anything to make him feel like he did not like him because he was Hispanic, that he and Henckel got along, and that Henckel gave him excellent feedback except for his tardiness. Docket no. 27-1 at 38-39. A "plaintiff's own good faith belief" that his membership in a protected class motivated his employer "is of little value." *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991).

Rather, it appears that Abrigo's only basis for establishing pretext is his assertion of disparate treatment. Abrigo admits that he has no evidence his supervisor in the Business Division, Freeman, or his supervisor in the Security Alarm Division, Giannini, treated him differently because he is Hispanic. Docket no. 27-1 at 47. Abrigo subjectively believes that Henckel was motivated by discriminatory purposes, but offers no evidence that Henckel treated him differently based on national origin beside the fact that Henckel did not "go across the policy board" with mandating 8:00 A.M. arrivals for every employee across different divisions, no matter their position. *Id.* at 39-40, 53. Abrigo says that because his termination "made no sense to [him] at all" and because the carpool participants continued to arrive late to work, he could only conclude that he had been discriminated against for his national origin. Docket 27-1 at 54. This conclusion ignores that the carpool participants all worked in different

departments than Abrigo and none were required to attend daily 8:00 A.M. meetings. Nor did any of the other carpool riders answer to the same manager (Henckel) as Abrigo.

While a plaintiff can demonstrate pretext by showing disparate treatment,[2] the Court has already concluded that Abrigo failed to produce evidence that other employees were similarly situated but treated more favorably under nearly identical circumstances. The only possible comparator, Hansard, had a different job in a different division, with a different direct supervisor. Although both employees were in Henckel's department, Abrigo establishes only that Hansard was also late, but for an unspecified period of time, while admitting that he would need time records (which he has not produced) to prove that Hansard had a similar record of tardiness. He further admitted that he did not know whether Hansard was disciplined for tardiness after August 2016, and thus he fails to establish that Hansard was similarly situated or that he was treated more favorably under nearly identical circumstances.

Moreover, HCTC benefits from the "same actor inference." "The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421-22 (5th Cir. 2009). Although Copp initially hired Abrigo in 2011, Henckel and Freeman interviewed Abrigo when he applied for the transfer in 2015, and Henckel approved the transfer (docket no. 27-1 at 39). Thus, because he hired Abrigo into the Services Department, he is entitled to a presumption that his later firing of Abrigo was not motivated by animus because it is irrational for an employer to show animus in termination but not in hiring.

---

[2] *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016) ("A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.") (quoting *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

Abrigo has failed to establish a material fact issue to survive summary judgment on his Title VII discrimination claim.

### III. State Law Claim

Abrigo also alleges that he was discriminated against based on state law, specifically bringing his claim under Chapter 21 of the Texas Labor Code. Docket no. 1 at 11–12. The purpose of this statute is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964." TEX. LAB. CODE ANN. § 21.001(1). Because the law governing the Texas statute and Title VII is identical, Abrigo's state law claim suffers the same fate as his Title VII claim. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999).

### CONCLUSION

Abrigo failed to allege a *prima facie* case of national origin discrimination and did not show that the legitimate reason given for his termination was pretext for discrimination. Therefore, HCTC's Motion for Summary Judgment (docket no. 27) is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE. The Clerk shall issue a Judgment in favor of Defendant that Plaintiff take nothing on his claims. Defendant shall submit a Bill of Costs within 14 days of the Judgment in the form directed by the Clerk.

SIGNED this 5th day of June, 2018.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE